UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RENE' TAYLOR,

      Plaintiff,

v.                        CASE NO.  8:11-CV-2137-T-17TBM

R.B. "CHIPS" SHORE,
CLERK OF THE CIRCUIT
COURT, MANATEE COUNTY,
FLORIDA,

      Defendant.

_____/


ORDER

This cause is before the Court on:


Dkt.  21    Statement of Undisputed Facts
Dkt.  22    Motion for Summary Judgment
Dkt.  23    Notice
Dkt.  30    Memorandum in Opposition
Dkt.  32    Notice - Deposition Excerpts
Dkt.  33    Notice - Errata

Plaintiff Rene' Taylor's Complaint includes Count I, for violation of Title VII of the Civil Rights Act of 1964, as amended, and Count II, for violation of Ch. 760.01, Florida Statutes, the Florida Civil Rights Act.  Plaintiff Taylor alleges that Defendant Shore treated Plaintiff Taylor differently from other employees on account of her race, African American, and caused Plaintiff Taylor harm by discharging her from her employment.


Plaintiff Taylor seeks the award of damages from Defendant, including lost wages and benefits, back pay, front pay, mental anguish, loss of dignity, other equitable relief, as appropriate, and reasonable attorney's fees and costs of this action.

Case No. 8:11-CV-2137-T-17TBM

I.  Standard of Review

A.  Summary Judgment

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

> "The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted."  Id. at 249-50.

Case No. 8:11-CV-2137-T-17TBM

B.  Judicial Notice

The Court takes judicial notice of the personnel policies of Manatee County,
found at:
http://www.mymanatee.org/home/government/departments/humanresources/policies.
Section XI includes discipline and discharge policies, including general provisions,
grounds for discipline and discharge, progressive discipline and appeal process.
Section XIII includes policies as to illegal discrimination or harassment.

II.  Statement of Facts

Defendant has filed a Statement of Undisputed Material Facts (Dkt. 21), in which
Defendant has included facts which are undisputed only for the purpose of resolution of
the pending Motion for Summary Judgment.

Plaintiff Taylor has filed Plaintiff's Statement of Disputed and Undisputed Facts.
(Dkt. 30-1).

1.  Plaintiff Rene' Taylor began employment with the Clerk's office on August 18,
1997 as a Clerk trainee in the Traffic Fines department.  Plaintiff subsequently
transferred to the Recording Department as a Recording Clerk I.   Plaintiff was later
promoted to a Recording Clerk II, and remained in that capacity for the rest of her
employment.

2.  In 2008, the Recording Clerk position was organized into three levels: Clerk I,
II and III.  As a Recording Clerk II, Plaintiff Taylor was responsible for, among other
things: "accurately and effectively perform[ing] assigned duties for the Recording

Case No. 8:11-CV-2137-T-17TBM

division while providing prompt, accurate and courteous service to all customers. Employees in this position are also "responsible for effectively communicating with coworkers and helping to foster a positive work environment."

3.   Clerks who work at the counter, as Plaintiff Taylor did, greet the public, review their documents, determine whether the documents are recordable by the Clerk, and identify the costs associated with filing to customers.  Clerks also sometimes answer the phones, and respond to inquiries from the public regarding the filing of documents and costs associated with filings.

4.   Plaintiff Taylor was supervised by Fred Letts until 2005.  In her deposition, Plaintiff Taylor described Fred Letts as "laid-back."

5.   In April, 2005, Kathy Stott became the supervisor of the Recording Department.  Kathy Stott documented performance and conduct problems of her staff. After Kathy Stott's promotion, all employees in the Recording Department, including Plaintiff Taylor, began to receive verbal counselings and more attention was paid to their work habits and performance, including attendance.  (Taylor Deposition, Dkt. 21-2, pp. 10-13).

6.   On February 7, 2008, Plaintiff Taylor received a written disciplinary action for repeatedly reporting to work late, after prior counseling about lateness, including a meeting on 1/17/2008 in which the policy that "lateness without prior notice was inexcusable" was discussed.   The disciplinary action memo states:  "Future behavior of this nature is grounds for further discipline up to and including termination." (Dkt. 21-2, pp. 66-67).

Case No. 8:11-CV-2137-T-17TBM

7.  On January 5, 2009, Plaintiff Taylor received a written disciplinary action relating to a written request for surplus funds, and Plaintiff Taylor's failure to follow department policy by returning documents to the sender without the documents being checked by another clerk and initialed before leaving the Clerk's Office.  The disciplinary action memo refers to an "on-going problem with reading cover letters."  Kathy Stott counseled Plaintiff Taylor about avoidable performance errors on August 26 and September 12, 2008.    The disciplinary action memo states that "If future job performance does not improve it could lead to further discipline up to and including termination.  We will review your probationary status on March 9, 2009."  (Dkts. 21-2, p. 68;  21-4, p. 2).

8.  On February 11, 2009, at 10:00 a.m. a City of Palmetto employee brought several documents in to the Recording Department to be recorded (a lien and several releases).  Plaintiff Taylor received the documents, but put them aside in a basket to be recorded later.  In her deposition, Plaintiff Taylor testified she explained to the customer that "...these are invoices, that we don't do them at the front counter and that I would put it in the tray and we would get it done that day." (Dkt. 21-2, p. 36, l. 19-21).   Plaintiff Taylor further testified that if the customer had said "I need this recorded now" Plaintiff would have had the invoice account checked and if the customer had enough money then would have recorded the document.  (Dkt. 21-2, p. 37, l. 12-16).

9.  A supervisor with the City of Palmetto, "Cheryl," telephoned and spoke with Kathy Stott about 3:00 p.m. to inquire about the status of the recording.  (Dkt. 21-4).   In her deposition, Plaintiff testified:

> Q.  Okay.  All right.  So then what happened?  So she
> comes, asks–tells you she needs to get it recorded.  You
> give her an explanation that you're not doing it then, it gets

5

Case No. 8:11-CV-2137-T-17TBM

> done in the afternoon.  She uses the phone.  She says thank you.  She leaves.  Then what happens?
>
> A.  And then later maybe, and I'm not sure about maybe 3:00 or 3:30 Kathy Stott from her office yelled to me, do I remember the City of–do I see papers from the–documents from the City of Palmetto on–at the counter, and I said, they're in the tray.  And she said that the supervisor is on the phone and she's giving me a hard time.  She's threatening to call Mr. Shore about it because she is trying to see the document on the system.  And Kathy, in turn, told me to get it out of the tray and record it.  She checked the invoice account.  City of Palmetto had money.  It got recorded.  I still make out index and every–all of that, and that's the last I heard about.

(Dkt. 32-1, p. 56).


        10.  On February 11, 2009, Kathy Stott e-mailed notice of a complaint from the

City of Palmetto to her supervisor, Karene Leworthy:

> Just received a phone call from City of Palmetto–Cheryl. She said that an individual came into Recording this morning with documents to record.  She supplied a cover letter with an A/R account.  Rene Taylor told the courier that we don't do A/R's in the morning.  That one person does them in the afternoon.  That our procedure had changed.  Cheryl went to view the images on line and could not find them.  One lien and four releases.  The documents were still sitting in the A/R bin at 3:20 p.m.  If another document had recorded before the lien it would be an issue due to our lack of doing our job.  I also talked with the courier and she was very specific to their conversation.  I asked Rene her side but she seemed as if what she told them wasn't an issue.  I explained we are to receipt our customers when they come to the counter with a document and tell you they need it recorded.  You are to do it not set it on the side.  She thought we had problems doing A/R's with pulling the

Case No. 8:11-CV-2137-T-17TBM

> incorrect account number so only one person was creating
> the receipts.  I asked where she got that information.  Did
> another employee tell her that?  She said no.  She was sorry
> it created an issue and she would apologize to the city.  That
> she would do her own A/R's because she didn't want to get
> into trouble.  City of Palmetto was getting ready to set up a
> petty cash fund for recording because of this conversation.  I
> told Cheryl if she ever has a problem again to call me
> directly or to ask for Martha if I am not available.   That I was
> sorry for what had happened.
>
> She is currently on probation until March 9th–for returning a
> surplus fund request–does not read her cover letters.

(Dkt. 21-4, p. 4).

11.   Karene Leworthy reviewed Plaintiff Taylor's discipline history and confirmed
that Plaintiff Taylor was on probation.  (Dkt. 21-6).  On February 27, 2009, Karene
Leworthy e-mailed Defendant R.B. "Chips" Shore to recommend termination of Plaintiff
Taylor's employment, based on the fact that Plaintiff Taylor was on probation when the
February 11, 2009 incident occurred.  (Dkt. 21-6):

> On February 11,2009, Recording Supervisor received a
> phone call from Cheryl with the City of Palmetto.  She said
> that their courier came to Recording that morning with
> documents to be recorded and a cover letter for using the
> A/R account.   Rene Taylor, Recording Clerk II, told the
> courier that we don't do A/R's in the morning, one person
> does them in the afternoon, and the procedure had been
> changed.  Later that day, when Cheryl attempted to view the
> images via the internet and could not find them, she called
> our office to followup.  Ms. Stott located the documents (one
> lien and four releases) in the A/R bin at 3:20 p.m.  As part of
> my review of the situation, Ms. Stott also talked with the
> courier, who was very specific as to the conversation with
> Rene as summarized above.

Case No. 8:11-CV-2137-T-17TBM

> When Rene was asked about the issue, she seemed unconcerned with the inconvenience and potential liability to the customer, could not explain why she provided inaccurate information that the procedure had changed, and indicated that "she didn't want to get into trouble."
>
> Rene's lack of attention to detail and failure to comply with policies and procedures has the following impacts:
>
> • Creates potential financial and legal liabilities for both the Clerk 's Office and the customers
> • Damages the trusted relationship with our customers for the performance of statutory responsibilities
> • Violates the public trust for reliance on our organization's business processes
> • Requires excessive supervisory resources to monitor her work and customer service
> • Demonstrates unacceptable and inaccurate customer service
>
> Rene has been counseled previously (August 26, September 12, and December 11, 2008) regarding her failure to follow departmental procedures and it (sic) currently on probation. Therefore, we are recommending termination effective today.

(Dkt. 21-6, p. 4).

12. On February 27, 2009, Defendant Shore approved the termination of Plaintiff Taylor's employment. (Dkt. 21-6, p. 4).

13. On February 27, 2009, Plaintiff Taylor met with Kathy Stott, Karene Leworthy and Christine Clyne. Karene Leworthy informed Plaintiff Taylor of the termination of her employment. (Dkt. 21-2, p. 41).

14. Before February 27, 2009, Plaintiff Taylor had gone to Employee Relations

Case No. 8:11-CV-2137-T-17TBM

to state various concerns, but Plaintiff Taylor never told Christine Clyne, Director of Employee Relations, or management that she believed that she was the victim of race discrimination.  (Dkt. 21-2, pp. 15-16).

15.  Plaintiff Taylor filed a Charge of Discrimination on June 15, 2009.  (Dkt. 2-1). The Notice of Right to Sue is dated June 16, 2011, and the return receipt shows that Plaintiff received the Notice on July 6, 2011.   Plaintiff Taylor commenced this case on September 21, 2011.

16.  Plaintiff Taylor acknowledged receipt of a copy of the Clerk of Manatee County Court's EEO policy prohibiting discrimination and harassment, and procedure to report violations on 2/23/2007.   (Dkt. 21-2, pp. 63-64).  Plaintiff Taylor acknowledged receipt of a printed copy of the Clerk of Manatee County Court's personnel policies on 3/26/2007.  (Dkt. 21-2, p. 64).   Plaintiff Taylor acknowledged reading the Clerk of Manatee County Court's personnel policies on 2/9/2009; the personnel policies were available at any time on the Clerk's intranet .   (Dkt. 21-2, p. 65).

17.  The progressive discipline policy includes the following steps, which are to be interpreted as guidelines only:

Step 1 - Oral Counseling or Warning
Step 2 - Written Counseling or Warning
Step 3 - Written Discipline Notice, Suspension without Pay, Probation, Demotion.
Step 4 - Discharge

III.  Discussion

Plaintiff has asserted a claim under Title VII, and under the FCRA.  Because "decisions construing Title Vii guide the analysis under [the FCRA]", see Harper v.

Case No. 8:11-CV-2137-T-17TBM


<u>Blockbuster Entm't Corp.</u>, 139 F.3d 1385, 1389 (11th Cir. 1998), the Court will not
address the FCRA claim separately.


A.  <u>Prima</u> <u>Facie</u> Case


    Plaintiff Taylor alleges that Defendant discriminated against her because of her
race by discharging Plaintiff for an offense that was not and had not been considered a
serious charge, and Plaintiff Taylor was treated different from other, non-African
American employees who had committed similar or worse violations than Plaintiff had
allegedly committed.   Title VII provides that "[i]t shall be an unlawful employment
practice for an employer- (1) to fail or refuse to hire or to discharge any individual
because of such individual's race, color, religion, sex, or national origin.  <u>See</u> 42 U.S.C.
Sec. 2000e-2(a)(1).   A plaintiff may prove employment discrimination through direct or
circumstantial evidence.


    Where there is no direct evidence of discrimination, a plaintiff typically makes a
case of discrimination through indirect evidence using the framework set forth in
<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).   Under that framework,
Plaintiff Taylor makes a <u>prima</u> <u>facie</u> case by showing that: (1) she belonged to a
protected class; (2) she was qualified to do the job; (3) she suffered an adverse
employment action; and (4) the Clerk's Office treated similarly situated employees
outside of Plaintiff's protected class more favorably.  <u>Crawford v. Carroll</u>, 529 F.3d 961,
970 (11th Cir. 2008).   A <u>prima</u> <u>facie</u> case creates a rebuttable presumption of
discrimination.


    If Plaintiff Taylor can present a <u>prima</u> <u>facie</u> case through circumstantial evidence,
the burden shifts to Defendant to articulate a legitimate nondiscriminatory reason for its

Case No. 8:11-CV-2137-T-17TBM

actions.  See Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1243 (11th Cir.

2010).  If Defendant satisfies this burden of production, the burden shifts back to

Plaintiff Taylor to produce evidence that the articulated reason is merely a pretext for

discrimination.  Id. at 1244.  To carry this burden, Plaintiff Taylor must rebut the

nondiscriminatory reason articulated by Defendant.    Plaintiff Taylor can show pretext

by persuading the Court that a discriminatory reason more likely than not motivated

Defendant, or by showing that Defendant's proffered explanation is false or "unworthy of

credence."  See Jackson v. State of Ala. Tenure Comm'n, 405 F.3d 1276, 1289 (11th

Cir. 2005).  The Court evaluates whether Plaintiff has demonstrated such weakness,

implausibilities, inconsistencies, incoherencies, or contradictions in the proffered reason

that a reasonable factfinder could conclude that it is unworthy of credit.    Id at 1289.  To

demonstrate pretext, Plaintiff must show both that the employer's proffered reason is

false, and that discrimination was the real reason.   Brooks v. County Commission of

Jefferson County, Alabama, 446 F.3d 1160, 1163 (11th Cir. 2006).   If an employer

disciplines an employee because it mistakenly, but honestly, believes the employee

violated a company policy, the disciplinary act is not "because of race" and the employer

has not violated the law.  See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th

Cir. 1991).


       The Court notes that the methods of presenting a prima facie case are not fixed;

they are flexible and depend to a large degree upon the employment situation.   See Nix

v. WLCY/Rahall Communications, 732 F.2d 1181, 1184 (11th Cir. 1984).   One way to

show discriminatory intent is through the burden-shifting framework of McDonnell

Douglas, supra.  Another way is by presenting circumstantial evidence that creates a

triable issue concerning the employer's discriminatory intent.  Smith v. Lockheed-Martin

Corp., 644 F.3d 1321, 1388 (11th Cir. 2011).

Case No. 8:11-CV-2137-T-17TBM

This case is not a "direct evidence" case.   Plaintiff's circumstantial evidence does not include statistical evidence.   The Court looks to the <u>McDonnell Douglas</u> framework to analyze the circumstantial evidence.

Defendant concedes that Plaintiff Taylor can establish the first and third elements of the <u>prima</u> <u>facie</u> case.   Defendant argues that Plaintiff Taylor was not qualified for the position, and Plaintiff Taylor cannot demonstrate that Plaintiff Taylor was treated less favorably than other, similarly-situated employees.

1.  Qualification

In the Eleventh Circuit, when a plaintiff has held a position for a long period of time, in determining whether the plaintiff has made a <u>prima</u> <u>facie</u> case, the Court infers that the plaintiff is qualified.  <u>Damon v. Fleming Supermarkets of Florida, Inc.</u>, 196 F.3d 1354, 1360-61 (11th Cir. 1999).   Allegations of poor performance are properly considered when the Court evaluates the pretextual nature of Defendant's proffered nondiscriminatory reasons for termination.

The Court notes the qualifications for the Recording Clerk II position.  (Dkt. 21-2, pp. 58-61).  For the purpose of establishing a <u>prima</u> <u>facie</u> case only, based on the length of Plaintiff's employment, the Court finds that Plaintiff Taylor was qualified for the position.

2.  Similarly Situated

A relevant comparator is an employee who is similarly situated to the plaintiff "in all relevant respects."  <u>Wilson v. B/E Aerospace</u>, Inc., 376 F.3d 1079, 1091 (11th Cir.

Case No. 8:11-CV-2137-T-17TBM

2004) (citation omitted).  In determining whether a comparator is similarly situated, the Court inquires "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  Burke-Fowler v. Orange County, 447 F.3d 1319, 1323 (11th Cir. 2006) (quotation omitted).  And "[w]hen making that determination, [the Court] require[s] that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions."  Id. (alteration and quotation omitted).   Although a comparator need not have the same job title as the plaintiff to be a sufficient comparator, material differences in "ranks and responsibilities" may render any comparison impossible without "confusing apples with oranges."  See Rioux v. City of Atlanta, 520 F.3d 1269, 1280–81 (11th Cir. 2008); Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir.1999).  Similarly, it is relevant, but not dispositive, that different decisionmakers were involved in administering discipline.  See Anderson v. WBMG-42, 253 F.3d 561, 565–66 (11th Cir. 2001).

    The Court notes that in 2008 and 2009, Plaintiff Taylor received two written disciplinary actions, which followed verbal counselings, for the following reasons: a) repeated incidents of reporting to work late; and b) avoidable performance errors, such as an ongoing failure to read cover letters.  As of January 5, 2009,  Plaintiff Taylor was on disciplinary probation; the status of Plaintiff's probation was to have been reviewed on March 9, 2009.   (Dkt. 21-2, pp. 66-69).    Then the February 11, 2009 incident with the City of Palmetto occurred.   Defendant views the incident as a lapse in the duty to provide excellent customer service to the public.  Plaintiff Taylor views the incident as a misunderstanding, in which Plaintiff explained to the courier that the lien and other documents would be recorded later in the day, and the courier did not explain the urgent need to record the documents that morning.

Case No. 8:11-CV-2137-T-17TBM

Cheryl, with the City of Palmetto, telephoned Kathy Stott at 3:00 p.m. on February 11, 2009 to inquire about the recording of the documents.  After the conversation with Cheryl, and after speaking with Plaintiff about the documents, verifying that the documents had not been recorded, and directing Plaintiff to record them, Kathy Stott notified Karene Leworthy of the incident.  (Dkt. 21-4).  Kathy Stott's concern was that the delay in recording could have resulted in liability for the Clerk's Office, if another obligation was recorded before the subject lien was recorded.

Based on Plaintiff's probationary status while alleged additional policy violations occurred, Karene Leworthy recommended the termination of Plaintiff's employment to Defendant Shore.  (Dkt. 21-6).   Defendant Shore approved the recommendation, and Plaintiff's employment was terminated.

a.  Comparators:  Ronda [Powers] and Phyllis Bohenberger

The Court notes that Plaintiff's Interrogatories refer to comparator "Ronda Power" and "Ronda Powell."  Defendant's Motion refers to comparator "Ronda Powers."  The Court will refer to this comparator as "Ronda [Powers]".

Plaintiff Taylor alleges that Ronda [Powers] and Phyllis Bohenberger "had a harsh altercation with profanity while working on the front counter in front of a few customers."   Plaintiff Taylor further states that the incident resulted in both women being suspended without pay for one week.  (Dkt. 21-2, p. 53).  In her deposition, Plaintiff Taylor testified that the above incident did not occur while Ms. Stott was Plaintiff's supervisor.  (Dkt. 21-2, p. 17).

Defendant argues that the above incident involved different violations and

14

Case No. 8:11-CV-2137-T-17TBM

different decision-makers such that neither Ms. Powers nor Ms. Bohenberger can be deemed comparators.

b.  Comparators: Ronda [Powers] and Martha Pope

Plaintiff Taylor alleges that Ronda [Powers] and Martha Pope had an altercation about a birthday cake; they both used harsh words and profanity in the presence of customers.  (Dkt. 21-2, p. 53).  Plaintiff Taylor alleges that Ronda [Powers] was written up and Martha Pope was demoted.

Defendant argues that neither Ms. Powers nor Ms. Pope were on disciplinary probation at the time of the above incident.  (Dkt. 21-5, Clyne Affidavit.), and therefore this violation did not involve the same or similar conduct (a report of failure to provide customer service while an employee was on disciplinary probation for prior violations).

c: Comparator:  Krystal Aguilera and Kathy Stott

Plaintiff Taylor alleges that Krystal Aguilera had many altercations with Ms. Stott, such that Ms. Aguilera's probationary period was extended for almost a year.  Plaintiff Taylor further alleges that Ms. Aguilera filed a grievance with Personnel. (Dkt. 21-1. P. 53).

Defendant argues that Ms. Aguilera's probation occurred during her initial probationary period as a newly hired employee.  All new employees are subject to a one-year probationary period.  (Dkt. 25-5, Clyne Affidavit.).  Defendant argues that this violation did not involve the same or similar conduct, in that the extension of a new-hire probationary period due to lack of knowledge is different from the refusal to provide

Case No. 8:11-CV-2137-T-17TBM

customer service while on disciplinary probation for prior violations.

d.  Comparator:  Ronda [Powers] and Kathy Stott

Plaintiff Taylor alleges that Ronda [Powers] "got upset with Kathy Stott, used
profanity and stormed out of Kathy's office mad."  Plaintiff Taylor alleges that Ronda
Powers was not terminated after many such incidents.

Defendant argues that, in her Deposition, Plaintiff Taylor admits she did not hear
the conversation between Ms. Powers and Ms. Stott, did not know if Ms. Powers used
profanity during her conversation with Ms. Stott, and did not know if Ms. Stott heard Ms.
Powers use profanity.  (Dkt. 21-2, p. 72).  Defendant argues that this incident does not
show that a comparator was treated more favorably than Plaintiff.

e.  Comparator: Mindy Garcia

Plaintiff Taylor alleges that Mindy Garcia was arrested on March 10, 2009 for
"possession of a controlled substance without a prescription, marijuana, 20 gm, or
cocaine.  Distribution/possession/manufactured intent to sell."  Plaintiff Taylor further
alleges that Ms. Garcia was still employed as of May, 2010, and was never suspended.
(Dkt. 21-1, p. 53).

Defendant argues that Ms. Garcia did not work in the same department as
Plaintiff Taylor, and reported to a different supervisor.  (Dkt. 21-2, p. 23).  Defendant
further argues that the incident did not occur at work, and Plaintiff Taylor did not know
what, if any, discipline Ms. Garcia received.    Defendant argues that Ms. Garcia is not a
comparator, as the violation did not involve the same or similar conduct, and involved a

Case No. 8:11-CV-2137-T-17TBM

different decision-maker.

Defendant argues that Plaintiff cannot establish the fourth element of a prima facie case by showing that Plaintiff was treated differently than a comparator.

Plaintiff Taylor responds that the white persons who worked with her were not put on probation for failing to properly review their letters, or for creating disturbances in front of customers.   As to the two white male employees who Defendant claims to have discharged in similar circumstances, Plaintiff argues that there is no showing that they held similar jobs or committed offenses similar to those alleged against Plaintiff.  Plaintiff Taylor argues that those employees were not supervised by Kathy Stott, and the Leworthy Affidavit establishes only that the two employees were on probation, and committed another offense.  Plaintiff argues that Defendant has not identified the offenses those employees committed, and has not identified the positions they held.

After verbal counseling, Plaintiff received a disciplinary "write-up" for chronic lateness, and  received a disciplinary "write-up" for not following Recording Department policy in having another employee check Plaintiff's work, in relation to ongoing "avoidable performance errors."   Under Defendant's policy of progressive discipline, Plaintiff was put on disciplinary probation.  The February 11, 2009 incident involved a delay in recording documents.  The conduct of most of the comparators involves episodes of verbal conflict, including repeated episodes of verbal conflict, some in front of the public; one comparator was accused of a drug crime.  One comparator was on "new-hire" probation.

The Court notes that Plaintiff has not alleged that the comparators were on disciplinary probation, as Plaintiff Taylor was, and the comparators did not violate the

17

Case No. 8:11-CV-2137-T-17TBM

same work rules and policies as Plaintiff.   The Court concludes that the quantity and quality of the comparators' conduct is not nearly identical to Plaintiff's conduct. Therefore, the comparators identified by Plaintiff are not similarly situated to Plaintiff Taylor.

Because Plaintiff Taylor has not identified a comparator that is similarly situated to Plaintiff, Plaintiff has not established a prima facie case, and the presumption of discrimination does not arise.   If a plaintiff does not show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

B.  Legitimate Non-Discriminatory Reason

Defendant argues that, if Plaintiff Taylor could establish a prima facie case, Defendant is entitled to summary judgment because Defendant had legitimate, non-discriminatory reasons for Plaintiff Taylor's termination, and Plaintiff Taylor has no evidence of pretext.  The legitimate, non-discriminatory reason for the termination of Plaintiff Taylor's employment was that Plaintiff committed a further offense while on disciplinary  probation.

In light of the verbal counseling and warnings, and the disciplinary action memos, the Court finds that Defendant was not satisfied with Plaintiff's job performance. Defendant considered the February 11, 2009 incident a violation of Defendant's policy regarding customer service which, given Plaintiff's disciplinary probation, justified termination of employment.    (Dkt. 21-6).

Case No. 8:11-CV-2137-T-17TBM

C.  Pretext

Plaintiff bears the burden of establishing that the legitimate, non-discriminatory reason for the termination of Plaintiff's employment was pretextual, and must present significantly probative evidence on this issue to avoid summary judgment.  If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  See Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000).  Quarreling with the reason is not sufficient.  See Id.  The evidence of pretext may include the same evidence offered initially to establish the prima facie case.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997).

Defendant argues that Plaintiff Taylor does not allege that the reasons given for Plaintiff Taylor's termination were false.  Plaintiff Taylor admits that Plaintiff Taylor did not record the documents in the morning of February 11, 2009, and Plaintiff has no admissible evidence that the incident with the City of Palmetto was not the real reason for the termination of her employment.

Plaintiff responds that Plaintiff has produced evidence that Plaintiff did not commit any further offense, and that Plaintiff followed the rules and procedures as set out by her supervisor.    Plaintiff further argues that Kathy Stott did not get Plaintiff's side of the story, which is contrary to Kathy Stott's assertion that she did.

Plaintiff Taylor argues that there is a material factual dispute between Plaintiff Taylor's version of the post-violation investigation, and Defendant's version of the post-violation investigation.  Where there is a conflict in the facts, the Court presumes the non-moving party's evidence to be true.   However, this conflict in the facts does not

Case No. 8:11-CV-2137-T-17TBM

necessarily preclude the entry of summary judgment.   If the Court assumes that Kathy Stott did not question Plaintiff Taylor to the same extent Kathy Stott said she did, this does not change the fact that Kathy Stott viewed Plaintiff Taylor's conduct as a failure to provide adequate customer service that potentially exposed the Clerk's Office to liability.

The focus of the Court's inquiry as to pretext is not whether Plaintiff Taylor in fact violated Defendant's rules and procedures on February 11, 2009, but whether there is sufficient evidence of the alleged violation to be of legitimate concern to Defendant, and whether that was the real reason for the termination, and not a pretext for race discrimination.   It is undisputed that the City of Palmetto's courier brought the documents to Plaintiff Taylor on the morning of February 11, 2009, but Plaintiff Taylor did not record them at that time.  It is undisputed that the City of Palmetto contacted Kathy Stott as to the recordation of the documents delivered to the Manatee County Clerk's Office on February 11, 2009, that the documents were not recorded as of 3:30 p.m. on that date, and Kathy Stott then directed Plaintiff to record the documents.  It is further undisputed that Kathy Stott notified her supervisor, Karene Leworthy, of the incident on the same day, and that on February 27, 2009 Karene Leworthy recommended the termination of Plaintiff's employment to Defendant Shore, the ultimate decisionmaker, who approved it.

It is undisputed that Defendant had a policy of progressive discipline, and that the employment of other employees has been terminated pursuant to the imposition of progressive discipline.  (Dkt. 21-6, Leworthy Affidavit).

The recommendation that Plaintiff's employment with Defendant be terminated is an application of the progressive discipline process.  The next step after verbal warnings and counseling, written warnings and probation is termination.

Case No. 8:11-CV-2137-T-17TBM

The alleged incident of poor customer service on February 11, 2009 triggered the last step in the discipline process following Plaintiff's repeated noncompliance with departmental policies and procedures.   Plaintiff's  alleged violation of the work policy to provide excellent customer took place after Plaintiff Taylor had received verbal warnings and counseling, followed by two disciplinary actions.  The last disciplinary action warned that if future job performance did not improve, it could lead to more discipline up to and including termination.

Plaintiff has argued that other employees outside of her protected class were subjected to less severe discipline than Plaintiff was.   As noted above, the comparators identified by Plaintiff are not true comparators.  The comparators were not on disciplinary probation, and did not violate the same work rules and policies.  The quantity and quality of the comparators' misconduct is not nearly identical to Plaintiff's misconduct.  The Court finds that the comparators were not similarly situated.   Since the comparators were not similarly situated, Plaintiff's evidence does not establish a genuine issue of material fact as to Defendant's legitimate, non-discriminatory reason for Plaintiff's termination.

Even if Plaintiff was disciplined for an incident that was not in fact a violation of Defendant's policy to provide good customer service, Plaintiff has produced no evidence that Defendant did not honestly believe that Plaintiff did violate Defendant's policy.  It is not the Court's role to second-guess the business judgment of an employer. An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." See Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984).

Case No. 8:11-CV-2137-T-17TBM

D. Other Circumstantial Evidence

The Court has considered the evidence to determine whether Defendant had a particular concern with race, and whether there is circumstantial evidence which connects the race of Defendant's employees to Defendant's decision-making.   Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1388 (11th Cir. 2011)("convincing mosaic of circumstantial evidence" found).

Plaintiff Taylor argues that Defendant did not investigate the facts before imposing discipline.

The incident of February 11, 2009 involved Plaintiff Taylor, the City of Palmetto's courier, and "Cheryl," the City of Palmetto employee who telephoned Kathy Stott.  In her initial report, Kathy Stott recounted her conversation with "Cheryl" and the City of Palmetto's courier.  Kathy Stott states that she spoke with Plaintiff Taylor to "get her side," a fact which Plaintiff Taylor denies.

Karene Leworthy's recommendation to Defendant Shore mirrors the information Kathy Stott reported to her.  Plaintiff Taylor has argued that none of the persons who made the decision to fire her did any investigation of the specific events.  The adequacy of an independent investigation into the facts, coupled with Plaintiff's denial that Plaintiff violated Defendant's policies on February 11, 2009, is not sufficient circumstantial evidence to raise a triable issue of fact.  As noted above, the basic facts of the February 11, 2009 incident are not disputed by Plaintiff.   Even if Defendant was mistaken that Plaintiff violated Defendant's policy of providing good customer service, it is uncontroverted that Defendant believed that Plaintiff did so.

Case No. 8:11-CV-2137-T-17TBM

In the Complaint, Plaintiff alleges that "Defendant Shore employs very few African Americans and has an overwhelmingly white workforce."  Even if it is true, this fact alone is not sufficient to create a triable issue.

After consideration, the Court concludes that Plaintiff has not established a <u>prima facie</u> case, and has not shown the presence of a material disputed fact as to the legitimate nondiscriminatory reason for the termination of Plaintiff's employment. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment is **granted**.  The Clerk of Court shall enter a final judgment in favor of Defendant and against Plaintiff, and close this case.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 27th day of June, 2013.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record